Case 15-2301, Lauren Gohl v. Livonia Public Schools. Madam Clerk, if you'll just wait a minute till everybody finishes their moving around. I'm thinking your honor. We've got we have a couple of make sure we've got everybody in in position okay I knew I knew we had some extra counsel that we're going to argue on this case okay everybody everybody set clerk may call the case. Case 15-2301, Lauren Gohl v. Livonia Public Schools et al. Pro argument not to exceed 15 minutes and 15 minutes will be shared by the defendants. Mr. Desmond for the appellant. Good morning your honors Christopher Desmond on behalf of the plaintiff appellant. Judge Box if I may I'd like to reserve three minutes for rebuttal. You may. Your honors I'd like to start today with what's presented as the second issue in our brief which is the excessive force claim under the 14th amendment against defendant Sharon Terbiak. That claim arises out of the 14th amendment in the in the appeal on the basis of a violation of substantive due process and your honor I know that your honors I know there's been a variety of case law cited both district court cases and circuit court cases addressing this issue in the briefing the case that I'd like to focus on is the Webb v. McCullough case which Judge Boggs I know you're very familiar with Webb v. McCullough having authored it but I think that when you look at the the lesson of Webb v. McCullough what it overwhelmingly demonstrates is something that I think unfortunately wasn't enacted by the district court in this case and perhaps in some of the other district court opinions cited by the defendants on appeal which is that you have to look when you're looking at a particular use of force to look at what the justification for the force is what the rationale behind the use of force is and then figure out whether or not the potential purpose of the defendant using that force was malicious in nature or was intended to harm in this instance I think that the the evidence overwhelmingly shows that there wasn't a pedagogical intention behind the use of force in this case at least when viewing the evidence in the light most favorable to the plaintiff there's been some discussion that when Miss Terbiak grabbed my client's head and yanked his head backwards as she was doing so in response to some act of his in which he potentially threw a toy now we're talking again about a three-year-old developmentally disabled child who potentially threw a toy in a classroom but when you look at she did say according to the evidence you know you need to listen that right that is what so the the best evidence at least that isn't contradicted directly that I see it that's true the best evidence that we have in terms of what happened not coming from Miss Terbiak's mouth is the report from Miss Sloboda who was the witness to this event who did not see the throwing of the toy she saw the yanking of the head and then heard Miss Terbiak scream you need to listen so the you need to listen may have been in response to throwing a toy it may not have been but but I'd also assert that the notion of a child any child not listening in a classroom is a common enough theme that our teachers shouldn't have constitutional protections to yank their heads in response to simply not listening and that when you aggravate the situation by adding in the factors that we're dealing with three-year-old children who are nonverbal who are in many instances non-mobile who can't communicate what's happening in these classrooms to other adults to their parents we have to be particularly protective and view this evidence as we always do in the light most favorable to the non-moving part in terms of pedagogical rationale yes your correct me if this is if you have a different view in these disabled child cases and I've had several you know I was well isn't disabled children that's the spring break case but Domingo you're trying that that staying on task focusing is a large part of what you're trying to do and as I read it Ms. Gold is that how you pronounce it yes Ms. Gold says afterwards he was paying more attention he was more focused that was really good now I'm not saying that that's the right way to do it but that was one of the problems involved look so my response your honor would be that the issue of whether or not there's a pedagogical or disciplinary purpose isn't a discrete issue of law which I think is evidenced by web beam or factors well it is and but even even that factor can be deemed a question of fact by this court because in web v. McCullough despite the fact that it wasn't in a classroom setting and it was on a class trip setting the court didn't say it's clear that there was no disciplinary purpose here what the court said is a reasonable finder of fact could conclude that the the conduct in nature was not disciplinary in intent and so I mean I don't know it seems like you that's the reason there are many factors here I mean surely you can physically grab someone and raise your voice in terms of the concept of redirecting that's pedagogical and the problem here is that you did more of it than you needed to the jerking of the head but that that's accounted for by the either the next factor and other factors so I'm just puzzled by your you know putting all your eggs in the is there a pedagogical purpose I mean surely there's a pedagogical purpose for a teacher with disabled children or not to sit there and get someone's attention and raising voice and grabbing someone does that the problem here is jerking the head which gets to the other factor so I guess I'm I'm puzzled by what your theory of the case is no your honor and I understand and I'm not saying that our entire argument rests on whether or not there is a purely pedagogical purpose or not I do think that that that is a question of fact but I also think one of our areas of disagreement with the question of fact whether raising your voice and physically grabbing someone constitutes redirecting and getting their attention I think it is your honor because I think that when you look at what miss Loboda stated to miss more in her letter unlike the way it was characterized by Miss Terbiak her intent miss Loboda seems to clearly look at this as I know we lose patience with our students but I think it's appropriate to be able to respond to them in an appropriate manner and so it doesn't appear to me that another educational professional who saw these events viewed this as oh this is just a disagreement about how you should proceed in a classroom when trying to educate students and I think one of the things that's important in understanding the atmosphere of this classroom as a whole for the course of this entire school year this way if all she'd done was physically grab him and raise her voice you wouldn't be challenging the pedagogical purpose of that would you I guess it would depend on the degree of that's my point there's nothing upsetting about it except that you know you physically grab and raise your voice you wouldn't say there's no pedagogical purpose there would you it would depend on what that was in response to your honor if you just walk up to a student and you physically grab him and you scream at him in response to nothing misbehaved everything else is the same right if they misbehaved and what I'm saying your honor is that while Miss Terbiak has said there was misbehavior I mean to what about the point of the nature of the injury it's it's a it's a single event and it's the nature of the injury where how does that weigh in this all of this so the nature of the injury your honor I believe comes down to a question of fact as well we have the mother stating that as a result of these events I know that judge Boggs has referenced that he he may listen better but what the mother has said is that his behavior has dramatically fallen off as a result of these events in his presence in this classroom that he now mimics the behavior that he suffered at the hands of his teacher by is that is that referring to page 830 there because I've read that that deposition and there are a couple of things there one is the part that I was starting to quote at 841 and then she says and after summer after we removed him it completely changed and so then 830 says it all stems from the back thing where he told me miss Sharon hit now is that the only reference to miss Sharon hit or is she referring to an earlier page that I didn't know I think that's the only reference your honor to miss Sharon and so there's no indication whether you know that yeah that that that told me was you know a year later a month later a day later your honor and yeah and that's fair and that's yeah I think that's fair your honor and unfortunately when this is one of the the sad realities of this case is by virtue of the types of disabilities that these students suffer from as well as their tender ages it's not something where we can rely on these students so yeah that in Domingo yeah there are two things Domingo was a dissent and if you might say either obviousness of trauma so on can you make an argument that this is worse than being bound and gagged well what I would say your honor is that the fact that we have and I know the district court disagreed with us on this point but the fact that you have exposure over the course of a school year to not only physical what I would characterize as physical abuse but also emotional abuse and emotional trauma that's a good point do you have any case that says in an excessive force case here we're talking excessive force you can add psychological verbal whatever abuse over some period not specifically of the child correct I don't have a Sixth Circuit court case but the case that we cite to in our brief and that we argued to the district court was a district court case out of Florida I believe it's called JV verse Seminole County it's a Florida district court case so in that case it was a similar instance where you were dealing with special needs students and there was emotional abuse happening throughout the course of the school year and the court referenced that emotional abuse when making a determination about whether this was conscious shocking behavior so just not based on excessive force or was it simply the whole situation was conscious the same the same claim that we have your honors a substantive due process violation I understand that but I just met in the JV case was there was there a specific physical incident as well or was it based on a course of emotional conduct I believe it was very similar to this case and that there was a company we can read it if there was a combination of following this judge played you have a question go ahead go ahead I thought the number the theory of your case was that lower functioning children were treated more harshly and less well than better functioning children in that they suffered more physical and emotional abuse were yelled at more were treated more physically than than less disabled children is based upon the Megan Sparrow and some of the other witnesses that said that low functioning children were treated worse or more harshly is is that not the novel the theory that you're presenting well that just clay I'd say that's not necessarily our excessive force 14th Amendment claim doesn't necessarily depend on those factors those factors were discussed more in regard to our more discrimination based claims so our discriminate our equal protection claim and our ADA claims and the purpose of discussing that evidence was to demonstrate discriminatory intent on behalf of Miss Terbiak in terms of the reason why she targeted the students she did was because she was frustrated by their disability meaning had they not been disabled they would not have suffered the same fate that they did in her classroom so I don't think we need to necessarily reference that evidence although I think it is important evidence to understand that again the classroom environment that we're dealing with here I don't think that our 14th Amendment excessive force claim relies on that evidence yes so just I just want to make sure I'm understand the exchange you were having with judge Boggs on excessive force so your excessive force claim doesn't just go out of the March 5th incident no you're saying it was excessive force what was going on from October forward of 2012 and even though that other force was not directed well so absolutely I am I'm saying that it encompasses the in that and that's I take it part of the reason you're doing that is that helps you with the injury because the injury the psychological injury stuff is not exclusively tied to March 5th well I'd agree with that I just help me out yeah me your theory of the case so so your honor I first of all I want to clarify and I know the district court certainly click characterizes it as a single incident as does defense but that's what I was thinking yeah okay but you're so yeah I am I think that there's a reasonable inference to be drawn from this record when you look at when the complaints first get taken to Shelly Moore who's the principal of the school in October miss Terbiak after being confronted by miss Moore goes and has a conversation with her co-workers and one of the statements she makes to her co-workers is I'm not going to place my hands on client by name there were complaints taken to miss Moore about a variety of students and when miss Terbiak finds out about that she specifically references my client I think that that creates an inference I'm glad you said that I think I'm helping me figure this out so that's successive force usually means physical force right and so that's your way of what you just said is your way of saying this wasn't the first time she put her hands on it I'd agree with that that's the point you're trying to make but but the statement you just gave doesn't tell you anything about excessiveness no you put their hands on three-year-old well children when they're teaching them all the time disabled or not you're right your honor but what we have here is a situation where you have not just one co-worker disagreeing with another co-worker you have a variety of co-workers all approaching Shelly Moore and all of them in concert saying we're concerned with the way she's treating her students if this was one employee disagreeing with another employee I could see the court saying well you know what sometimes there's a disagreement there's a difference of opinion this is a variety of individuals who are all trained to work with special needs students who are all saying the way you're treating your students is not appropriate and that's both physically and emotionally and so I understand okay thank you your honor's right on your side how are you gonna divide your time morning your honor's John the Raven on behalf of defendant Sharon Terbiak we have six minutes for the argument to that mr. Desmond addressed the satchel has six minutes for argument one and mr. Kamenik has three minutes for the remainder as judge Sutton alluded to I think the most applicable case to the situation is is Lillard versus Shelby County Board of Education in 1996 decision from this court in that situation a male teacher held the chin of a female student and slapped her across the face harder than he meant there was no apparent purpose at all no disciplinary or pedagogical purpose at all to the slap and this court said that it was quote simply inconceivable that a single slap could shock the conscience now it may not be appropriate it may not be the best method for teaching or engaging in a pedagogical pursuit but it is not an unconstitutional one and the court further said we don't conclude that a single slap even for no purpose could shock the conscience and in this instance JG the minor plaintiff was not slapped at all but it was a single alleged jerking of the head and he had thrown a toy immediately beforehand miss Terbiak immediately afterwards according to miss Laboda's testimony and disciplinary thing she grabbed him by the chin and put a hand behind his head for the purpose of protecting him so that when he was reprimanded sorry Sloboda says this is what Terbiak did what's Laboda said was you need to listen to me and that she jerked his head back Miss Laboda said that miss Terbiak said said that he that you need to listen to me when she jerked his head back aggressively but then what's the part about grasping the face it's on it's undisputed from miss Terbiak's testimony that she grabbed him by the chin and put one hand behind his head to protect him and jerked his head well no she does not she denies that she jerked his head in fact our purpose is we have to accept that you have to accept that yes we have although she held his chin yes it's undisputed about the back of the hand on the back of the head well if miss I think inferences can be drawn about that but I think that the we have record proof that Jaden was prone to thrust his head and did it quite regularly we have a testimony from his mom we have documents that we submitted in the course of our briefs and and testimony from the physical therapist that he was jerking and thrusting his head in response to anything in this case miss Terbiak said that it was done in response to reprimand I don't know what conclusions the court can ultimately reach but there's no question that she was grabbing his chin for the purpose of redirection and the statement even miss Laboda makes that he she said you need to listen to me is disciplinary in nature I don't think there's any dispute that what about the fact that these four Domingo factors are pretty fact-intensive I mean purpose is your friend on the other side of saying all sounds like the stuff of a jury trial well this court reached the same conclusion with really all three plaintiffs in Domingo and affirmed summary judgment of those cases one of the students was strapped to a toilet another student was kept on a toilet for as much a quarter of the day and the third student was as you noted bound and tied to a gurney and summary judgment was upheld in that case so and when you walk through the factors in Domingo you have a pedagogical purpose which I've just described we have a we have testimony and evidence that there was no apparent injury to JG after the incident in fact afterwards miss Respondek testified that when miss Terbiak directed him to pick up the toys he was so that's the injury piece we've talked about the pedagogical purpose there was no evidence of malice or sadism in her action again that what about counsel's point that it's not just the March 5th incident with regard to what in particular with regard to the excessive force excessive force excessive force it's not just March 5th is going on throughout and the fact that she directs this at everybody obviously includes JG well it's you know it's psychological well first of all there were no complaints or concerns raised at all between October and this March incident so we have October November December January February where nothing happened at all so there's really no with respect to this child or any child in that classroom or the afternoon classroom even so all of the complaints were after March 5th no the the concerns were first raised up to October and then that's the point where Terbiak says okay I'll straighten up right and then with regard to the October incidents as Judge Goldsmith found and plaintiff doesn't dispute on appeal none of those were directed at JG and there is no evidence that JG witnessed any of them in fact many of them most of them occurred in the afternoon classroom or not in that year at all so I think so there's no force directed in any capacity at JG other than that March 5th incident and that's why physical force there has been I mean you think with children it wouldn't have to be physical I can imagine a bullying teacher doing as much damage as with what they're saying is what they're doing with their hands well I wouldn't rule that out but I would say this that this court has never said that bullying constitutes excessive force under the 14th amendment so that's relevant for like qualified immunity purposes yes which which was my next argument if I can go there we have authority that I can say for the court obviously the court knows that it can affirm on grounds different than those that the district court relied upon but I have authority if you want it that the court can affirm specifically on qualified immunity grounds if even if there was an arguable constitutional violation but the in this instance what Ms. Terbiak could have looked at in terms of authority at the time of this incident March 5th 2012 was the web decision which certainly did not compare as the court pointed out in web it was an incident which had no pedagogical or times expired unless my colleagues have further questions well just just one last how do you account for the mysterious colleagues that she was being overly abusive or harsh with with disabled students wouldn't in fact find to be entitled to take these observations into account these first-hand accounts of colleagues who witness incidents with her well first of all there's been no evidence that JG was exposed to them but I can walk through each and every one of those if you'd like to explain how either JG wasn't in that classroom or how those incidents were explained by testimony well there's going to be two sides but if if there's a pattern of Terbiak doing this that that would be a pertinent factual contested matter to be looked at in connection with the totality of the circumstances don't you think well I don't think so because if the court has traditionally looked at the incident at issue to demonstrate determine whether there was malice or sadism if that's what you're referring to and there's mistreatment I don't know if it matters that malice can be demonstrated maybe malice can be inferred from the incident itself but I'm I don't know that anybody's necessarily list malice in the complaint well no that's one of the elements of Domingo and that's what I was referring to when I brought up the yeah but Domingo may not apply here because there was no indication in Domingo that that was dealing with the redirect technique that that's that's at issue in this case so that that case is distinguishable anyway an argument can certainly be made that Domingo does not apply here and that more more apposite is Lillard where there was no purpose to the slap and the court said that we can't imagine a situation where that doesn't shock the conscience all right thank you thank you good morning your honors my name is Gary Sashita I represent Livonia public schools I will be addressing argument one which is the ADA and RA claims the courts discussion so far is not focused on these claims and plaintiffs counsel did not directly address them but I have some points I'd like to make in response to plaintiffs reply brief submitted on appeal one of the issues in this case has been plaintiffs counsel's sort of global consideration of what was going on in this classroom as a means to establish prima facie elements of JG's ADA and RA violations and I think in in considering whether that's appropriate it's useful to look back at the prima facie test that this court has articulated for title 288 and for RA claims and I want to direct the court's attention to the Anderson versus City of Blue Ash case that we cited in our briefing which is at 798 F 3rd 338 and in that case the court explained in the context of the causation piece of the prima facie test that the plaintiff must show that the discrimination was intentionally directed toward him or her in particular and when you look at an educational deprivation or exclusion prima facie test which is what has been alleged in this case we see some sort of similar language in that the plaintiff must prove that he or she was deprived of an educational benefit by reason of his or her disability now in this case Judge Goldsmith applied that prima facie test and examined the evidence that plaintiff had put forward and found that none of that evidence demonstrated a prima facie test just out of curiosity are you using that for shorthand for McDonnell Douglas type thinking that is the way that the test has been referenced and I just want to make sure that that's what you're saying yes okay yes going I have a question but I want to let you continue okay thank you judge when judge Goldsmith applied that test he looked at the evidence that plaintiff had presented first on the issue of educational exclusion and determined that the expert reports which were the primary piece of evidence that plaintiff had put forward did not meet the summary judgment standard of raising a triable issue on a genuine issue let me tell you that's something that just seems a little odd all of this that I'm McDonnell Douglas is a way to deal with the absence of direct evidence okay right that's the whole point because it's often hard to find but the test is very strange when applied to a say a classroom or something where the whole protected group the classroom is only people in the protected group means it's you have this problem with comparators and it seems it frankly seems unfair to the plaintiff in this case right it just it seems like a bit of a game and so what I would say is that McDonnell Douglas or I what I would wonder is whether McDonnell Douglas even applies in this kind of a setting but what I would say instead that doesn't mean JG loses what what it means is that when it comes to the direct evidence side you have to be mindful of the fact that you can establish proof of discriminatory intent because of causation circumstantially that's okay there's nothing wrong with that and that can be enough to get you to a jury and so that strikes me as a better way to think about it I don't think it makes a huge difference when it comes to the evidence I think your plaintiff still has the same issue just showing that there was a denial of a benefit and it was a because of due to because of discrimination but how do you react to that framework I mean I agree that circle circumstantial evidence should be permitted and we've never taken the position that circumstantial evidence should not be permitted and I don't think that was the basis for Judge Goldsmith's decision either I think what happened in the district court was that plaintiff presented no evidence circumstantial or direct evidence that Miss Terbiak was motivated by the students disabilities in the actions she took well I mean the circumstantial evidence I mean I think judge clay were referenced this earlier you do have some statements they're not about situations with JG but you do have statements which suggest that she had more trouble the more disabled the child was so that that might be circumstantial evidence of animus towards disabled right but I think the the prima facie test would still require us to show that that animus was then same prima facie remember my framework has nothing to do with prima facie I'm getting rid of McDonald okay so that in order to establish a violation of JD's ADA and RA rights you'd still have to transfer that animus to JG and that's the piece I think is missing in this case judge Goldsmith assumed that plaintiff had put forward evidence or just assumed that that he had established discriminatory animus as to Miss Terbiak's behavior towards some of these lower functioning students these other students in the evidentiary piece that was missing was how did that translate into discriminatory animus with regard to JG on March 5th 2012 the evidence we have in the record is Miss Laboda's statement and her statement reveals that when she observed this behavior Miss Terbiak made the comment of you need to listen which does not meet the test for direct evidence that this court is articulated in the employment context I would suggest it doesn't meet the test for it doesn't suggest even circumstantially that at that moment miss miss Terbiak was motivated but JG's disability was a significant factor in her decision to allegedly jerk JG's head back and that's that's the causation requirement one of the question I'm embarrassed I don't know the answer to but isolate the case as if it worked this way so it's a hypothetical it's counterfactual so nothing had happened before March 5th you have the March 5th incident and you have Terbiak saying at the time you know I don't like disabled kids and the ones I like the least are the ones that are most disabled so you have clear because of but she said no problems before the incidents investigated she's fired that day what happens in terms of a lawsuit against the school district under say the ADA is the answer well she's an agent for the school district so the intents attributed to the school district you're out of luck or is the answer no as soon as the school district heard about it it fired her how does that case work well it's interesting you say that because originally all of the individual defendants I know I know and they and they didn't appeal those but right just tell me the answer to my hypothetical well I don't think there's any authority to say that in that instance Livonia Public Schools can take the position that miss Terbiak was not an agent at the time the alleged discriminatory action so it's responsible even though the administrators didn't know about it and as soon as they knew about it they acted that's correct there is a type of claim where administrator knowledge comes into play and that would be in a peer peer-on-peer harassment claim such as like a hostile learning environment claim there's authority for that in fact the SS case we cited right anything else Thank You counsel Thank You judges both the remaining issues good morning may it please the court my name is Robert Kamenak I represent defendant Cynthia demand and I'll be addressing argument number three as the court knows that is the equal protection claim judge Goldsmith properly granted summary disposition for one fundamental reason I think is really uncontested on appeal for the most part and that is there was no showing the threshold requirement of disparate treatment I went back to the briefs last night your honor and looked at plaintiffs brief main brief pages 38 to 44 by the way plaintiffs reply brief does not address this argument at all so the sum and substance of the argument is found at those pages there is some argument is as follows since there was an absence of evidence that there was that she abused non-disabled students therefore she did not abuse non-disabled students and a for sure I there's disparate treatment with respect to this particular plaintiff who is disabled I mean I think the state the proposition is to effectively refute it it's a circular reasoning there are no facts given for that it just doesn't work the only other argument made is that she supposedly did not like or detested supposedly this particular student and somehow that equates with the disparate treatment there's no case law cited for the authority logically it makes no sense but from there what I'd like to stress to the court is that with respect to any other defendant there are no arguments made on appeal there are no factual arguments made with respect to disparate treatment there is no showing of any of how any treatment was done with respect to non-disabled students so the argument is waived on appeal you've got a brief it can't leave it to the to this court to go ahead and fill in the gaps so it's not waived the other children who were not disabled and and the allegation is that the ones who were disabled were treated less well than the others because you there weren't complaints the forthcoming necessarily about about the non-disabled students or if if if the even if the disabled constituted a class of similarly situated people and and and they're the supposed victims that's what the protection but that's that's what the ADA and the Rehabilitation Act was designed to protect but your honor if I may going back to that particular argument plant does not contest on appeal the lack of evidence of disparate treatment just it's not argued on appeal my point about waivers this is that it's one thing to present an arguments another thing to fill in the gaps of the factual argument the only factual argument you have is with respect to terbiac here and that is the argument that I made that the lack of evidence somehow constitutes affirmative evidence that satisfies the plaintiff's burden under rule 56 this is so I can be clear here there's what there would be one argument between disabled and disabled children and saying well the non-disabled there aren't any there they're out in the wide world and on the classroom the other would be the more disabled versus the less disabled within the same classroom are you saying they don't make that argument either or you're saying that's a bad argument I don't I don't see that argument made again I would refer the court to the exact pages of the plaintiff's brief pages 38 to 44 okay and insofar as it's I just want to make the evidence of the case is that JG was not one of the lower functioning students that is all that is in the brief I know my time has expired and so I'd ask the court to affirm okay thank you all right and you have your three minutes thank your honors thank you your honors very quickly I'd like to start off with a factual clarification when counsel states that there were no complaints of any any misconduct occurring between October when Miss Terbiak is confronted by Miss Moore and Miss Duman and then March when the incident with my client occurs on March 5th what the evidence actually shows is that after October after Miss Terbiak has spoken to she begins locking the doors to her classroom and physically covering the windows to her classroom so she's actively attempting to conceive to outsiders what's happening inside of her classroom beyond that we have a statement this is also cited to in our brief with record citation Beth Santer told Candy Sokol in March that there are weekly complaints against Sharon Terbiak and that if we took all of them to the administration it would look like we had an agenda against her I'm sorry who says this Sobel Beth Santer told Candy Sokol answer tells Sobel Sobel is the deponent and there's how does she get her the evidence in she yeah I think I think this came out during Candy Sokol's deposition I believe it might have come out through the notes I'm not positive about that your honor but there is a record site that's the answer is the the individual who initially went to Shelly Moore and was the one that all the employees were approaching with their complaints she sort of compiled the complaints and initially took them to Shelly Moore but she claims in March that there are weekly complaints and that they're not taking those to the so I think that when you look at what's actually occurring here it's not so clear you're still talking excessive force it I am and I want to transition judge Sutton into some of the points that you were making regarding the discrimination based claims yeah so just so I want to make sure you answer this one directly and probably this is where you were gonna start yes it's actually a friendly question in one sense it still leaves you with a burden but it's saying in this kind of a setting where there really aren't comparators or if they are they're pretty hard to find like how does she treat people in other classrooms which just seems very strange to me so you don't on one hand you don't get what is supposedly an easier test McDonnell Douglas but I think very hard for you in this setting so I think in some sense that makes your burden easier but so what all you ask is you just ask is there circumstantial or direct evidence sufficient for a jury to conclude that a benefit was denied because of disability how does that sound to you so well it's a framework I had a I had a I I agree with the framework and I agree with your your idea of there being evidentiary difficulties based on the setting you can be in I had a lengthy discussion with the district court judge and I believe it was in the very first summary judgment argument in this case which was miss demands argument where he started to ask me if she's not interacting with any students who aren't disabled how do you prove disparate treatment and my response was imagine you're in a classroom where all of the students are african-american there are no white students in there and the teacher has openly opined that he or she is hostile to african-americans because they're african-americans well the fact that that teacher doesn't have the opportunity to treat white students differently than african-americans doesn't mean that he or she is still not acting with discriminatory intent and the case law that I cited to in the brief regarding this when you agree with me I do and the case law that I cited to in my brief I believe it was the Johnson case and then an opinion that you I don't believe you authored but you sat on the panel it was Davis versus prison health systems you took the position in that case that there are certain instances where a plaintiff is not going to be required to show disparate treatment where you have direct evidence of discriminatory intent and I think here with the evidence that judge clay was referencing where we have complaints from co-workers talking about how she's frustrated with I mean I know that evidence but what's your best evidence as to about JG or it's about JG in terms of because of well the statements where she indicated that or the statements where her co-workers said she's frustrated with this a bit with disabled students and the level of disability in students those weren't targeted to students other than JG they didn't say and I don't even have any other initials of other students but just to make up initials they didn't say well she's frustrated with AS's level of disability and that's why she abuses AS what these co-workers said is she's frustrated with the disabled students and with their level of disability and she herself said I'm frustrated with the level of disability in my students and so when you also look and this was a argument that was more fleshed out in the lower court record particularly at the summary judgment hearings when you look at the acts of abuse that she was perpetrating those acts of abuse were generally tailored towards the type of disability her students had the students who were not very mobile those were the students that she was allowing to fall onto the ground and then laughing at the students who had auditory sensitivities those were the students that she was screaming in their faces and then had auditory disabilities one of them was the student who she put Pringle cans over their elbows so she couldn't cover her arms to cover her ears as she was being screamed at with JG one of his disabilities was the fact that he had a shunt implanted in his brain and it was JG that she chose to grab by the hair and yank his head backwards so what we've argued is that when you put that evidence and her types of behaviors in the context of her co-workers statements it appears that not only does she dislike these students because of their disabilities but she's actually punishing them for their specific disabilities. Thank you your honors I appreciate the time. Judge Clay this is the the last time you'll see me this week I promise. Take your word for it. That case will be submitted and the clerk may call the next case.